**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DURRELL A. PUCKETT,<br><br>            Plaintiff,<br><br>      v.<br><br>K. BRANDON,<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.: 1:14-cv-00290-SAB (PC)

PRETRIAL ORDER

***Motion in Limine Deadlines***:
       Filing:      August 26, 2016
       Response:   September 9, 2016
       Hearing:     October 3, 2016, at 10:30 a.m.
       in Courtroom 9

***Trial Date***:
       October 11, 2016, at 8:30 a.m. in Courtroom 9
       (SAB) (2-3 days)

This Court conducted a telephonic pretrial conference hearing on August 29, 2016.  Plaintiff Durrell A. Puckett appeared pro se, and Deputy Attorney General Lawrence Bragg appeared on behalf of Defendant.  Pursuant to Federal Rule of Civil Procedure 16(e) and Local Rule 283, the Court issues this final pretrial order.

## I.      JURISDICTION AND VENUE

This Court has jurisdiction and venue is proper.  This Court has original jurisdiction under 28 U.S.C. § 1331.  Venue is proper because a substantial part of the events or omissions on which the claim is based occurred in this District.

///

///

1

## II.    TRIAL

Trial will begin on **October 11, 2016, at 8:30 a.m.** before United States Magistrate Judge Stanley A. Boone in Courtroom 9 (SAB).  The trial will be trial by jury.  The parties estimate the trial will take 2 to 3 days.  Trial will consist of a jury of eight individuals with each side having three peremptory strikes.

## III.    FACTS AND EVIDENTIARY ISSUES

### A.    Undisputed Facts

The following facts are undisputed:

**Plaintiff contends that the following facts are undisputed:**

1.    That Brandon worked on Plaintiff's housing unit.

2.    That Brandon had the capability to work on Plaintiff's tier.

**Defendant contends that the following facts are undisputed:**

1.    Plaintiff Durrell A. Puckett (G-05549) was a California prisoner housed at California State Prison-Corcoran (Corcoran) at all times material to the claims at issue.

2.    Defendant K. Brandon was a correctional officer employed by the California Department of Corrections and Rehabilitation (CDCR) at Corcoran at times material to the claims at issue.

3.    Puckett filed a lawsuit against Correctional Officer S. Arreguin on June 1, 2010.

4.    In June 2013, Puckett was housed at Corcoran in housing unit 3A03-141U, which is located in the lower tier of the housing unit.

5.    In June 2013, Brandon was not assigned to work on the tier where Puckett was housed;

6.    Puckett did not actually observe Brandon search his cell on June 17, 2013.

7.    Cell searches at Corcoran are documented by a Daily Activity Record, which indicates that Puckett's cell was not searched on June 17, 2013, during second watch, between 6:00 a.m. and 2:00 p.m.

8.    Puckett submitted a CDCR form 602 Inmate/Parolee Appeal, log number CSPC-2-13-004412, dated June 17, 2013, which alleged that Brandon had refused to feed him, had harassed him,

2

had used racial epithets, and had searched his cell on June 17, 2013, destroying his family photographs and obituaries, which was not received by the Appeals Office at Corcoran until June 26, 2013.

9.     Puckett received a Rules Violation Report, Log Number 3A03-13-06-004, for assaulting Brandon and Licensed Psychiatric Technician G. Coronado on July 18, 2013, by throwing a brown liquid at them and pled guilty to the charge of Battery on a Peace Officer on November 29, 2013.

10.     Puckett was exposed to oleoresin capsicum pepper spray on July 18, 2013, in connection with the assault on Brandon and Coronado.

11.     Puckett received a Rules Violation Report, Log Number HCO-13-06-02 on June 13, 2013, for Indecent Exposure with Masturbation.

12.     Puckett made a suicide attempt on July 7, 2013, by swallowing a razor.

13.     Puckett filed a lawsuit, *Puckett v. North Kern State Prison Employees,* No. 1:08-cv-1243 BTM POR (E.D. Cal.), which alleged that correctional staff destroyed Puckett's family obituaries and photographs.

14.     Puckett filed a lawsuit, *Puckett v. Zamora,* No. 1:12-cv-00948 AWI BAM (E.D. Cal.), which alleged that Puckett experienced emotional distress, paranoia, flashbacks, and became suicidal as a result of incidents with correctional staff on December 30, 2011, and January 10, 2012.

15.     Puckett filed a lawsuit, *Puckett v. Vogel,* No. 1:13-cv-00525 AWI SKO (E.D. Cal.), which alleged that Puckett experienced emotional distress, paranoia, flashbacks, and became suicidal as a result of incidents with correctional staff on October 19, 2011.

16.     Puckett filed a lawsuit, *Puckett v. Young,* No. 1:13-cv-00840 (E.D. Cal.), which alleged that correctional staff issued a false Rules Violation Report.

**B.     Disputed Facts**

The following facts are disputed:

**Plaintiff submits the following facts are disputed:**

1.     What tier did Brandon work on.

2.     How often did Brandon come in contact with Plaintiff.

3.     Did Brandon feed Plaintiff.

3

**Defendant submits the following facts are disputed:**

1. Whether Brandon was assigned to feed Puckett in June 2013.

2. Whether Brandon refused to feed Puckett in June 2013.

3. Whether Brandon harassed Puckett by calling him a rapist, a pervert, or used racial epithets towards Puckett.

4. Whether Brandon searched Puckett's cell on June 17, 2013.

5. Whether Brandon destroyed Puckett's family obituaries, photographs and legal papers on June 17, 2013.

6. Whether Brandon refused to feed Puckett, harassed Puckett, searched Puckett's cell, and destroyed Puckett's family obituaries, photographs, and legal papers in retaliation for Puckett filing a lawsuit against Correctional Officer S. Arreguin.

7. Whether Puckett suffered from a pre-existing psychological condition as of June 17, 2013.

8. Whether Puckett's suicide attempt of July 7, 2013, was caused by retaliation by Brandon because Puckett had filed suit against S. Arreguin.

9. Whether Puckett experienced any harm or damage as a result of the conduct of Brandon.

C. **Disputed Evidentiary Issues**

The following evidentiary issues are disputed:

**Defendant submits the following disputed evidentiary issues:**

Defendant contends that prior lawsuits filed by Puckett alleging similar injuries and damages is relevant to the issue of damages claimed in the present action.  When a plaintiff is claiming an injury, evidence of prior claims involving similar injuries is relevant to the issue of damages.  Bunion v. Allstate Ins. Co., 502 F.Supp. 340, 342 (E.D. Pa. 1980); Rico v. American Family Ins. Group, 267 F.Supp.2d 554, 558-59 (E.D. La. 2002).  Since Puckett is claiming that Brandon destroyed his family obituaries and photographs, the filing of a prior lawsuit alleging that another correctional officer destroyed Puckett's family obituaries and photographs is relevant to the issue of damages.  Similarly, since Puckett is claiming that he experienced emotional distress, paranoia, flashbacks, and became

4

suicidal as a result of the conduct of Brandon, the filing of prior lawsuits alleging emotional distress, paranoia, flashbacks, and suicidal ideation is relevant to the issue of damages.

Defendant asserts that Puckett has a pattern of filing lawsuits alleging retaliation by correctional staff after correctional staff issued a Rules Violation Report.  Evidence that plaintiff has filed other baseless lawsuits or claims that were similar in nature to the current claim may be relevant to show a pattern, scheme, or *modus operandi*. Gastineau v. Fleet Mortgage Corp., 137 F.3d 490, 495 (7th Cir. 1998).

Evidence should be excluded when it lacks relevance, consists of hearsay, is mere opinion, has not been authenticated, or when its probative value is substantially outweighed by the danger of unfair prejudice, confusion or needless delay.  Fed R. Evid. 402, 403, 602, 701, 802, 901(b).  Defendant objects to any evidence submitted by Puckett based upon or containing inadmissible hearsay, or evidence that is irrelevant, immaterial, or incompetent.

Defendant will contest the admissibility of any written statements by inmates whom Puckett claims are witnesses including, but not limited to, any statement signed by said inmates.

Defendant objects to any opinion testimony from Puckett regarding any matters that call for medical expertise.  Puckett should be precluded from offering at trial any and all testimony, reference to testimony, or argument relating to testimony, concerning any medical diagnoses Puckett received or the causation of these alleged injuries, in the form of an expert opinion which Puckett is not qualified to give.  Specifically, Puckett must be barred from offering his own opinion testimony concerning his claimed injuries and his contention that they resulted from Defendant's actions.  Because Puckett is not a medical expert, any opinion testimony he could offer concerning his medical diagnoses or the cause of his injuries are precluded under Federal Rules of Evidence 701 through 703.  Thus, Puckett must be precluded at trial from providing medical opinion testimony.

Should Puckett or any other incarcerated witnesses testify, Defendant will seek to impeach such witnesses by presenting evidence of prior felony convictions, under Federal Rule of Evidence 609.  The verdict in this case will be affected by the credibility of witnesses.  Therefore, Defendant argues that no one who has suffered a prior felony conviction is entitled to the false aura of veracity which would occur if impeachment were not allowed.

1    Defendant reserves objections to specific testimony and exhibits until such time as Defendant

2    has had the opportunity to hear such testimony and examine such exhibits.  Defendant will also file

3    specific objections to Puckett's exhibits once they have been exchanged with Defendant.

4    **IV.    SPECIAL FACTUAL INFORMATION**

5    Puckett alleges that Brandon retaliated against him in violation of the First Amendment by

6    refusing to feed him, harassing him and using racial epithets, and by searching his cell on June 17,

7    2013, and destroying Puckett's family obituaries, photographs and legal papers. Puckett alleges that he

8    experienced emotional upset and became suicidal as a result of this alleged retaliation.

9    Puckett was twenty-seven years of age at the time of the alleged events and was incarcerated at

10   Corcoran serving a sentence imposed on January 24, 2008. All of the medical treatment received by

11   Puckett following the alleged incident was provided by the Defendant's employer, the California

12   Department of Corrections and Rehabilitation. Due to his incarceration, Puckett has no viable claim

13   for lost wages or earning capacity. The evidence will demonstrate that Puckett suffered from pre-

14   existing psychological conditions and experienced subsequent psychological upset which are unrelated

15   to the alleged conduct of Brandon.

16   **V.    RELIEF SOUGHT**

17   Plaintiff seeks punitive damages in the amount of $30,000 and whatever relief the Court deems

18   necessary.

19   Defendant prays for judgment in her favor with Plaintiff taking nothing, as well as an award of

20   costs, and such other relief as the Court deems proper.

21   **VI.    POINTS OF LAW**

22   Defendant submits the following points of law:

23   **A.    Liability Under the 42 U.S.C. § 1983**

24   In order to prevail, Puckett must first demonstrate a violation of his federally protected

25   constitutional rights.  Havas v. Thornton, 609 F. 2d 372, 374 (9th Cir. 1979); Rutherford v. City of

26   Berkeley, 780 F. 2d 1333, 1446 (9th Cir. 1986); Baker v. McCollan, 443 U.S. 137, 140 (1979).

27   Puckett must specifically allege the unlawful conduct of each defendant.  Vague and conclusory

28   allegations concerning the involvement of official personnel in civil rights violations are not sufficient.

1    Ivey v. Board of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  Under 42 U.S.C.

2    § 1983, there must be an actual connection or link between the actions of the defendants and the

3    deprivation alleged to have been suffered by the Plaintiff.  See Monell v. Dep't of Social Services, 426

4    U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  A person "subjects" another to the deprivation

5    of a constitutional right within the meaning of the statute if he does an affirmative act, participates in

6    another's affirmative acts, or fails to perform an act which he is legally required to do, that causes the

7    claimed deprivation.  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

8        **B.    Retaliation In Violation Of the First Amendment**

9            A viable claim of First Amendment retaliation in the prison context requires evidence that the

10   prison official took some adverse action against an inmate because of that prisoner's protected

11   conduct, that such action would chill a person of ordinary firmness from future First Amendment

12   activities, and that the action did not reasonably advance a legitimate correctional goal.  Rhodes v.

13   Robinson, 408 F.3d 559, 567-69 (9th Cir. 2004) (citing Resnick v. Hayes, 213 F.3d  443, 449 (9th Cir.

14   2000) and Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir.

15   1999)); Barnett v. Centoni, 31 F.3d at 815-16.

16           To prevail on a retaliation claim, a plaintiff must show that his protected conduct was "the

17   'substantial' or 'motivating' factor behind the defendant's conduct.  Soranno's Gasco, Inc. v. Morgan,

18   874 F.2d 1310, 1314 (9th Cir. 1989); Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009).  If the

19   plaintiff is able to meet his burden, the defendants are entitled to show that they would have taken the

20   same actions in the absence of the protected conduct.  Mt. Healthy City Bd. of Educ. v. Doyle, 429

21   U.S. 274, 287 (1977); Soranno's Gasco, Inc., v. Morgan,  874 F. 2d at 1315.

22           Mere conclusions of hypothetical retaliation will not suffice; a prisoner must "allege" specific

23   facts showing retaliation because of the exercise of the prisoner's constitutional rights.  Frazier v.

24   Dubois, 922 F. 2d 560, 562 n.1 (10th Cir. 1990).

25           If a prisoner violates a legitimate prison regulation, he is not engaged in "protected conduct,"

26   and he cannot proceed with his retaliation claim.  Smith v. Campbell, 250 F.3d 1032, 1037 (6th Cir.

27   2001) (citing Thaddeaus-X v. Blatter, 175 F.3d 378, 395 (6th Cir. 1999)); see also Freeman v. Texas

28   Dep't of Criminal Justice, 369 F.3d 854, 863-64 (5th Cir. 2004).

### C. Punitive Damages

Puckett must prove more than a violation of his Eighth Amendment right to recover punitive damages.  In a § 1983 action, punitive damages are recoverable only if the defendant intended to violate federal law, or acted in a reckless or callous disregard of plaintiff's federally protected rights.  Smith v. Wade, 461 U.S. 30, 51 (1983).  It is not enough that the defendant may have acted in an objectively unreasonable manner; their subjective state of mind must be assessed.  Wulf v. City of Wichita, 883 F.2d 842, 867 (10th Cir. 1989).  Where there is no evidence that a § 1983 defendant has acted with evil intent, there is no legal right to punitive damages.  Ward v. City of San Jose, 967 F.2d 280, 286 (9th Cir. 1991).

### D. Impeachment By Evidence of Prior Felony Convictions

The verdict in this case will be decided by the jury after consideration of each witness's credibility.  In order to meet his burden of proof at trial, Puckett is expected to testify to his version of the events that occurred and to the basis for his belief that his constitutional rights were violated.  Rule 609 of the Federal Rules of Civil Procedure provides that evidence of a witness's prior conviction of a felony may be used to impeach that witness's testimony. Additionally, any of Puckett's incarcerated witnesses who testify are also subject to impeachment under Rule 609.

## VII. STIPULATIONS

Defendant stipulates that the parties need not introduce evidence to prove any undisputed facts as set forth by Defendant.  Defendant further stipulates to the authenticity of the documents.

## VIII. AMENDMENTS/DISMISSALS

Defendant does not have any requested amendments.

## IX. SETTLEMENT NEGOTIATIONS

Defendant does not believe that a settlement conference should be scheduled.

## X. AGREED STATEMENT

None.

## XI. SEPARATE TRIAL OF ISSUES

As is this Court's standard practice, the Court will bifurcate the issue of punitive damages.  If the jury finds that Defendant is liable for punitive damages, the Court will conduct a second phase of

8

trial on the amount of punitive damages.

Defendant submits that under federal law, Defendant bears the burden of proving financial worth when arguing in mitigation of damages.  Davis v. Mason County, 927 F.2d 1473, 1485 (9th Cir. 1991) (refusing to consider challenge to punitive damages on ground that Defendants could not pay where no evidence of net worth was offered to the jury); Tri-Ton Intl'l v. Velto, 525 F.2d 432, 438 (9th Cir. 1975) (refusing to interfere with award that was not outrageously disproportionate to circumstances when appellants offered no evidence of financial worth); Zarcone v. Perry, 572 F.2d 52, 56 (2d. Cir. 1978).  But it is patently unfair to require Defendant to choose between divulging her personal assets to an inmate and properly defending herself from an unfair award of punitive damages in this action.  To protect her interests, Defendant should be permitted to reserve her testimony as to her net financial worth until after any entitlement to punitive damages has been established.  Counsel for Defendant anticipates that less than five minutes of additional testimony would be required to present this information to the jury, should this request be granted.  And if Puckett fails to establish that punitive damages are warranted, this additional testimony would be unnecessary, thus shortening the length of trial and protecting Defendant's private information from disclosure to an inmate.

## XII.   IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

None.

## XIII.   PRE TRIAL FILING DEADLINES

### A.  Motions In Limine and Hearing.

Any party may file a motion in limine, which is a procedural mechanism to limit in advance testimony or evidence in a particular area.  United States v. Heller, 551 F.3d 1108, 1111 (9th Cir. 2009).  In the case of a jury trial, the Court's ruling gives Plaintiff and Defendants' counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury.  Id. at 1111-1112.  Although the Federal Rules do not explicitly provide for the filing of motions in limine, the Court has the inherent power to hear and decide such motions as a function of its duty to expeditiously manage trials by eliminating evidence that is clearly inadmissible for any purpose.  Luce v. United States, 469 U.S. 38, 41 n.4 (1984).

///

9

This Court further orders the parties to file motions in limine only with respect to important, critical issues.  Motions in limine on abstract evidentiary issues or issues more appropriately addressed by the Court on a case-by-case basis (such as a motion in limine to exclude all irrelevant evidence) will be looked upon with disfavor.  After satisfying the foregoing, if a motion in limine still seeks to address the admissibility of a particular trial exhibit, the exhibit in question must be referenced by the trial exhibit number so that the court can review the actual exhibit for admissibility.  If the exhibit sought to be admitted would not be in the court's possession one week prior to the motion in limine hearing, then the exhibit in question must be included in the motion.   Failure to properly reference or attach an exhibit in the motion will result in the request being denied.

The parties shall not file separate motions in limine for every issue presented to the Court. Rather, each party may file one consolidated motion in limine which is subdivided into separate sections for each issue setting for the legal authority and analysis.  The responding party shall file one opposition in response addressing each motion in limine issue in a separate section.

As set forth in the Trial Scheduling Order (ECF No. 52), the deadline for service and filing of motions in limine is **August 26, 2016**. The deadline for service and filing of an opposition, if any, is **September 9, 2016**. A telephonic motions in limine hearing will be held on **October 3, 2016 at 10:30 a.m.** in Courtroom Nine, before the undersigned. Counsel for defendants is directed to arrange for telephone contact with Plaintiff and to contact the Courtroom Deputy, Mamie Hernandez, at (559) 499-5672, prior to the hearing date, to receive instructions regarding the conference call.   The parties are directed to the Court previous order regarding the format and scope of the motion in limine and such motion and opposition shall conform to those requirements.

**B.     Trial Witnesses:**

No later than **September 30, 2016**, each party shall file and serve a final witness list, including the name of each witness and omitting witnesses listed in the joint pretrial statement which the parties no longer intend to call.  **<u>Only witnesses who are listed in this pretrial order may appear on the final witness list</u>.  The parties may not call any witness that is not on the final witness list unless (1) it is <u>solely</u> for impeachment or rebuttal purposes, (2) the parties stipulate, (3) additional**

1   witnesses are required in light of the Court's ruling on a motion **in limine**[1], or (4) it is necessary

2   to prevent "manifest injustice."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

3          During trial, the parties' are obligated to provide the opposing party, by the close of the prior

4   business day, the names of the witnesses the party intends to call on the next trial day.  If evidentiary

5   problems are anticipated, the parties' shall immediately notify the Court that a hearing will be

6   required.

7          The following is a list of witnesses that the parties expect to call at trial:

8          1.     Plaintiff Anticipates Calling the Following Witnesses:[2]

9          a.     Anthony Underdue (CDCR #AH-5378)

10         b.     Milton Singletary (CDCR #H-13722)

11         2.     Defendant Anticipates Calling the Following Witnesses:[3]

12   **Percipient Witnesses Who Will Testify in Person:**

13         a.     Defendant Brandon

14         b.     CDCR Correctional Officer S. Arreguin

15         c.     CDCR Correctional Officer R. Childress

16         d.     CDCR Correctional Officer A. Aranda

17         e.     CDCR Correctional Officer R. Yzaguirre

18         f.     CDCR Correctional Sgt. E. Felix

19         g.     CDCR Correctional Officer E. Magallanes

20         h.     Correctional Officer R. Ruiz

21         i.     CDCR Medical Technical Assistant A. Agboli

22         j.     CDCR Medical Technical Assistant R. Bulawin

23

---

24   [1] Any party seeking to add additional witnesses beyond those named in the final witness list in light

25   of the Court's ruling on a motion **in limine** must file a notice with the Court within two (2) days after the Court's order on the motion **in limine.**

26   [2] On July 22, 2016, the Court granted Plaintiff's motion for the attendance of incarcerated witnesses,

27   Singletary and Anthony Underdue.  (ECF No. 73.)

28   [3] As discussed at the telephonic pretrial conference on August 29, 2016, Plaintiff's objections to certain witnesses is overruled, without prejudice.

1        k.        CDCR Correctional Lieutenant D. Stroth

2        l.        CDCR Psychiatric Technician S. Latham

3        m.      CDCR Correctional Officer J. Foster

4        n.       CDCR Correctional Sergeant R. Pressler

5        o.       CDCR Licensed Psychiatric Technician D. Rose

6        p.       CDCR Appeals Coordinator Duane Goree

7        q.       CDCR Appeals Coordinator Michelle Oliveira

8        r.        Inmate Maurice Robinson (V-40871), California State Prison-Corcoran; and

9        s.        Custodian(s) of Puckett's central file and medical records

10     **Expert Witnesses Who Will Testify in Person:[4]**

11        a.       M. Gunther, M.D., Kern Valley State Prison, Delano, California. Dr. Gunther is the

12 Chief of Mental Health at Kern Valley State Prison (KVSP) and will testify concerning the nature and

13 extent of emotional and/or mental injuries, if any, sustained by Plaintiff as a result of the incident(s) of

14 June 17, 2013, at California State Prison-Corcoran, which is the subject of the above action. In

15 addition, Dr. Gunther may provide opinions to rebut any allegations or evidence as to Puckett's

16 injuries that Puckett, and/or experts retained by Puckett, testify to.  The basis for Dr. Gunther's

17 opinions will be a review of Puckett's prison health care records, and Dr. Gunther's experience and

18 training as a Chief of Mental Health for CDCR. Dr. Gunther has not prepared a report concerning this

19 matter as he is an employee of the California Department of Corrections and Rehabilitation (CDCR)

20 whose regular job duties do not include providing expert witness testimony at trial under Federal Rule

21 of Civil Procedure 26(a)(2)(B).

22        Summary of Dr. Gunther's Opinions: (1) Plaintiff did not suffer a significant mental injury, or

23 experience long-term consequences, as a result of the incident(s) of June 17, 2013, involving

24 correctional staff at California State Prison-Corcoran; (2) Plaintiff suffered from pre-existing

25 psychological conditions and experienced subsequent psychological episodes; and (3) any emotional

26

27 _____

28 [4] Defendant submits that a Disclosure of Expert Witnesses was served on July 8, 2016, and Plaintiff has filed objection to such disclosure.  (ECF No. 76.)

distress experienced by Plaintiff between June 2013, and the present, is unrelated to the alleged conduct of Defendant Brandon.

     b.     K. Knight, M.D., California State Prison-Corcoran, Corcoran, California. Dr. Knight is an employee of the California Department of Corrections and Rehabilitation (CDCR) who was a treating physician for Plaintiff. Dr. Knight is not specially employed to provide expert witness testimony for CDCR. Dr. Knight will testify to the diagnosis and treatment of Plaintiff's medical and psychological condition(s) while incarcerated by CDCR.

     c.     J. Kotler, Ph.D., California State Prison-Corcoran, Corcoran, California. Dr. Kotler is an employee of CDCR who was a treating psychologist for Plaintiff. Dr. Kotler is not specially employed to provide expert witness testimony for CDCR. Dr. Kotler will testify to the diagnosis and treatment of Plaintiff's psychological condition(s) while incarcerated by CDCR.

     d.     Ernest Wagner, M.D., 1400 N. Harbor Blvd., Suite 440, Fullerton, CA 92835 (714) 773-1502.  Dr. Wagner is a former employee of CDCR who was a treating physician for Plaintiff. Dr. Wagner is not specially employed to provide expert witness testimony for CDCR. Dr. Wagner will testify to the diagnosis and treatment of Plaintiff's medical and psychological condition(s) while incarcerated by CDCR.

     e.     S. Grewal, M.D., California State Prison-Corcoran, Corcoran, California. Dr. Grewal is an employee of CDCR who was a treating physician for Plaintiff. Dr. Grewal is not specially employed to provide expert witness testimony for CDCR. Dr. Grewal will testify to the diagnosis and treatment of Plaintiff's medical and psychological condition(s) while incarcerated by CDCR.

     f.     V. Vasilescu, Ph.D., California State Prison-Corcoran, Corcoran, California. Dr. Vasilescu is an employee of CDCR who was a treating psychologist for Plaintiff. Dr. Vasiescu is not specially employed to provide expert witness testimony for CDCR. Dr. Vasilescu will testify to the diagnosis and treatment of Plaintiff's psychological condition(s) while incarcerated by CDCR.

     g.     G. Thomas, Ph.D., California State Prison-Corcoran, Corcoran, California. Dr. Thomas is an employee of CDCR who was a treating psychologist for Plaintiff. Dr. Thomas is not specially employed to provide expert witness testimony for CDCR. Dr. Thomas will testify to the diagnosis and treatment of Plaintiff's psychological condition(s) while incarcerated by CDCR.

h.     H. Becicht, Ph.D., California State Prison-Corcoran, Corcoran, California. Dr. Becicht is an employee of CDCR who was a treating psychologist for Plaintiff. Dr. Becicht is not specially employed to provide expert witness testimony for CDCR. Dr. Thomas will testify to the diagnosis and treatment of Plaintiff's psychological condition(s) while incarcerated by CDCR.

i.     L. Yu, Ph.D., Pelican Bay State Prison, Crescent City, California. Dr. Yu is an employee of CDCR who was a treating psychologist for Plaintiff. Dr. Yu is not specially employed to provide expert witness testimony for CDCR. Dr. Yu will testify to the diagnosis and treatment of Plaintiff's psychological condition(s) while incarcerated by CDCR.

j.     W. Yee, M.D., Pelican Bay State Prison, Crescent City, California. Dr. Yee is an employee of CDCR who was a treating physician for Plaintiff. Dr. Yee is not specially employed to provide expert witness testimony for CDCR. Dr. Yee will testify to the diagnosis and treatment of Plaintiff's medical and psychological condition(s) while incarcerated by CDCR.

k.     C. Penn, Ph.D., Pelican Bay State Prison, Crescent City, California. Dr. Penn is an employee of CDCR who was a treating psychologist for Plaintiff. Dr. Penn is not specially employed to provide expert witness testimony for CDCR. Dr. Penn will testify to the diagnosis and treatment of Plaintiff's psychological condition(s) while incarcerated by CDCR.

l.     L. Castricone, Ph.D., Pelican Bay State Prison, Crescent City, California. Dr. Castricone is an employee of CDCR who was a treating psychologist for Plaintiff. Dr. Castricone is not specially employed to provide expert witness testimony for CDCR. Dr. Castricone will testify to the diagnosis and treatment of Plaintiff's psychological condition(s) while incarcerated by CDCR.

m.     P. Sayer, Ph.D., Pelican Bay State Prison, Crescent City, California. Dr. Sayer is an employee of CDCR who was a treating psychologist for Plaintiff. Dr. Sayer is not specially employed to provide expert witness testimony for CDCR. Dr. Sayer will testify to the diagnosis and treatment of Plaintiff's psychological condition(s) while incarcerated by CDCR.

All witnesses are available through Defendant's counsel at 1300 I. Street, Sacramento, CA 95814.  Defendant respectfully reserves the right to list additional witnesses, including expert and rebuttal witnesses, as deemed appropriate at the time of trial.

///

14

The parties are forewarned that <u>every</u> witness they intend to call must appear on their own witness list.  The mere fact that a witness appears on the opposing party's witness list is not a guarantee that the witness will be called at trial or otherwise be available for questioning by other parties.  Each party must undertake independent efforts to secure the attendance of <u>every</u> witness they intend to call at trial.

**B.  Exhibits**

As noted below, no later than **October 6, 2016**, Defendant shall file and serve Defendant's final exhibit list and pre-marked exhibits for both Plaintiff and Defendant.

1.  <u>Pre-Marked Exhibits</u>:

All exhibits must be pre-marked with an exhibit sticker or other legible numbering/lettering by the party who seeks to use it.  If the individual exhibit includes multiple pages and is not easily identified as to each page (i.e., Bates stamp numbering), then the exhibit must be page numbered. This requirement that exhibits be pre-marked applies both to evidence that will be formally admitted into evidence as well as any other exhibits that will be presented in any manner during trial, such as "demonstrative" evidence.  Each individual "original" exhibit that will be submitted to the jury must be stapled/fastened so that the exhibit does not become separated.  Further, exhibits submitted to the jury must be pre-marked on the front page <u>only</u> in the manner described above.  Impeachment or rebuttal evidence need not be pre-marked.

a.  **Joint Exhibits**:  Joint exhibits are those exhibits which all parties agree may be admitted into evidence without the need for laying a proper foundation under the Federal Rules of Evidence.  Joint exhibits must be pre-marked with the designation "J-[Number]" (e.g., J-1, J-2).  Those exhibits may be introduced at any time during the course of the trial.  However, unless the parties agree otherwise on the record, joint exhibits are not "automatically" admitted into evidence: at least one of the parties must admit a joint exhibit into evidence.  If an exhibit is not admitted by any party, the exhibit will not be given to the jury despite its "joint" designation as an exhibit.

b.  **Plaintiff's Exhibits**:  Plaintiff's exhibits must be pre-marked using **numbers** beginning with 1 (e.g., 1, 2, etc).  The Plaintiff must pre-mark his exhibits before they are

provided to the Defendant(s).

    **c.**    **Defendant's Exhibits**:   Defendant's exhibits must be pre-marked using **letters** beginning with A (e.g., A, B, C...AA, BB, CC...AAA, BBB, CCC, etc.).

    2.    <u>Exchange and Filing of Exhibits List and Exhibits</u>

No later than **September 28, 2016** the parties shall exchange their proposed exhibits.   The exhibits exchanged shall be pre-marked by each party and correctly exhibited in the format described in Part XIII.C.1, above.

Defendants are required to submit trial exhibits for both parties in binders.   As noted above, Defendant shall submit **three (3) complete, legible and identical sets of exhibits in binders** on or about **October 6, 2016**.   Within the binders, the pre-marked exhibits must be separately tabbed and assembled in sequential order.   The three complete binders shall be delivered to Courtroom Clerk Mamie Hernandez for use (1) by the Court; (2) at the witness stand for the witnesses; and (3) by the plaintiff at trial.

    3.    <u>Exhibits</u>

The following is a list of documents or other exhibits that the parties expect to offer at trial.   As set forth above, exhibits must be pre-marked.   <u>See</u> discussion, <u>supra</u>, Part XIII.C.1.   No exhibit, other than those listed in this section, may be admitted unless the parties stipulate or upon a showing that this order should be modified to prevent "manifest injustice." Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

    **a.**    **Plaintiff's Exhibits**

None listed.

    **b.**    **Defendant's Exhibits**

i.    Abstract of Judgment representing Puckett's felony conviction(s) and sentence(s);

ii.    Abstract(s) of Judgment representing felony conviction(s) and sentence(s) of Puckett's inmate witnesses (if any);

iii.    Puckett's CDCR chronological movement history;

iv.    CDCR 602 Inmate/Parolee Appeal Form, Log Number CSPC-2-13-004412;

v.    Relevant portions of Puckett's prison medical and psychological records;

16

vi.     Rules Violation Report, Log Number 3A03-13-06-004, dated July 2, 2013;

vii.    CDCR Crime/Incident Report, Log Number COR-03A-13-06-0360A1, dated June 18, 2013;

viii.   Daily Activity Record from Corcoran, dated June 17, 2013;

ix.     Rules Violation Report, Log Number HCO-13-06-02, dated June 13, 2013;

x.      CDCR Crime/Incident Report, Log Number COR-HCO-13-06-0351, dated June 13, 2013;

xi.     Rules Violation Report, Log Number 3A03-13-07-012, dated July 29, 2013;

xii.    CDCR Crime/Incident Report COR-03A-13-07-0450, dated July 29, 2013;

xiii.   Rules Violation Report, Log Number P13-1-0005, dated September 7, 2013;

xiv.    CDCR Crime/Incident Report PBSP-CTCI-13-09-0373, dated September 7, 2013;

xv.     Rules Violation Report, Log Number 03-P-1113-025, dated November 9, 2013;

xvi.    CDCR Crime/Incident Report CMF-MCS-13-11-0518, dated November 9, 2013;

xvii.   Complaint and relevant pleadings from *Puckett v. Areguin,* No. 1:10-cv-00971 (E.D. Cal.);

xviii.  Complaint and relevant pleadings from *Puckett v. North Kern State Prison Employees,* No. 1:08-cv-1243 BTM POR (E.D. Cal.);

xix.    Complaint and relevant pleadings from *Puckett v. Zamora,* No. 1:12-cv-00948 AWI BAM (E.D. Cal.);

xx.     Complaint and relevant pleadings from *Puckett v. Vogel,* No. 1:13-cv-00525 AWI SKO (E.D. Cal.);

xxi.    Complaint and relevant pleadings from *Puckett v. Young,* No. 1:13-cv-00840 (E.D. Cal.);

xxii.   CDCR form 602 Inmate/Parolee Appeal, Log Number CSP-COR-13-4404;

xxiii.  CDC 1083 Inmate Property Inventory, dated July 31, 2013; and

xxiv.   Photographs of the portions of California State Prison-Corcoran where the alleged incident(s) occurred.

///

17

If the parties intend to use copies of exhibits or evidence at trial, those copies must be legible. The Court may, on its own motion, exclude illegible copies from evidence.

4.     Responses to Discovery Requests

The parties may admit responses to discovery requests[5] into evidence.  The parties shall file and serve a list of all responses to discovery requests intended to be used at trial no later than **September 30, 2016**.  The list shall identify the responses to discovery requests by title and set number.

If a party seeks to admit a physical copy of the discovery responses into evidence at trial, the discovery responses must be pre-marked as an exhibit in the same manner discussed above.  <u>See</u> discussion, <u>supra</u>, Part XIII.C.1.  Alternatively, if the party intends to read relevant portions of the discovery responses into evidence, a copy of the discovery responses must be lodged with the Court no later than **September 30, 2016**.  The Court will address objections to discovery responses as they arise during trial.

Even though discovery is closed, all parties are reminded of their continuing obligation to update their prior discovery responses if they obtain new information or is otherwise made aware that a prior discovery response is incomplete or incorrect.  Fed. R. Civ. P. 26(e)(1).

**If a party attempts to admit or use for any purpose evidence that (1) was not previously disclosed during discovery and (2) should have been disclosed as an initial disclosure under Rule 26(a) or as a supplemental disclosure under Rule 26(e), the Court will prohibit that party from admitting or using for any purpose that evidence at trial, unless the failure was substantially justified or was harmless.  <u>See</u> Fed. R. Civ. P. 37(c)(1).**

5.     <u>Deposition Testimony</u>

Deposition testimony shall be designated by page and line number, with such designation to be **filed and served no later than September 20, 2016.**  Any counter-designation as to the same designation (also set out by page and line number) shall be **filed and served no later than September 30, 2016.**  The original certified transcript of any deposition identified in a designated or counter-

---

[5] Responses to discovery requests include responses to depositions by written questions (Fed. R. Civ. P. 31), interrogatories (Fed. R. Civ. P. 33) and requests for admissions (Fed. R. Civ. P. 36).

designation shall be lodged with the clerk's office **no later than September 30, 2016**, if not previously lodged with the Court.

If any party intends to admit relevant portions of deposition testimony into evidence, the relevant deposition testimony must be pre-marked as an exhibit in the same manner discussed above. See discussion, supra, Part XIII.C.1. However, any party may request that deposition testimony offered for any purpose other than impeachment be presented in nontranscript form, if available. See Fed. R. Civ. P. 32(c).

The Court will address objections to deposition testimony as they arise during trial.

6.      Duty of the Parties' Counsel

The Court respects the jury's time and expects issues that must be presented outside the jury's presence to be raised such that the jury's service is not unnecessarily protracted. To the extent possible, the parties shall raise issues that must be presented to the Court outside of the jury's presence (1) in the morning before the jury sits, (2) during breaks, (3) in the afternoon after the jury is excused or (4) during any other appropriate time that does not inconvenience the jury. For example, if evidentiary problems can be anticipated, the parties should raise the issue with the Court before the jury sits so that there is no delay associated with specially excusing the jury. Issues raised for the first time while the jury is sitting when the issue could have been raised earlier will be looked upon with disfavor and counsel may be sanctioned for any fees, costs or other expenses caused by their failure to raise the issue at a more convenient time.

7.      Post-Trial Exhibit Retention

Pursuant to Local Rule 138(f), the Court will order that custody of all exhibits be returned to the defendant's counsel after completion of the trial. The defendant's counsel shall retrieve the original exhibits from the courtroom deputy following the verdict in the case. The defendants' counsel shall retain possession of and keep safe all exhibits until final judgment and all appeals are exhausted or the time for filing an appeal has passed.

///

///

///

1    **D.    Trial Briefs**

2        Trial briefs are not required in this case.  However, if the parties chose the file a trial brief, it

3  shall be filed and served no later than **September 30, 2016**.[6]  The form and content of the trial brief

4  must comply with Local Rule 285.  Special attention should be given in the trial brief to address

5  reasonably anticipated disputes concerning the substantive law, jury instructions and/or admissibility

6  of evidence.  Local Rule 285(a)(3).  The parties need not include in the trial brief any issue that is

7  adequately addressed in a motion in limine or in an opposition brief to a motion in limine.

8    **E.    Jury Instructions**

9        The parties shall filed proposed jury instructions as provided in Local Rule 163 on or before

10  than **September 30, 2016**, The parties are only required to file proposed jury instructions relating to

11  the substantive law underlying this action. All proposed jury instructions shall (1) indicate the party

12  submitting the instruction (i.e., joint/agreed-on, Plaintiff's or Defendant's), (2) be numbered

13  sequentially, (3) include a brief title for the instruction describing the subject matter, (4) include the

14  text of the instruction, and (5) cite the legal authority supporting the instruction. If the proposed jury

15  instruction is based on the Ninth Circuit Model Jury Instructions, CACI, BAJI or other source of jury

16  instructions, the proposed jury instruction shall also include a citation to that specific instruction. All

17  proposed jury instructions shall be e-mailed in Word® format to saborders@caed.uscourts.gov no

18  later than **September 30, 2016.**  Jury Instructions will not be given or used unless they are so e-mailed

19  to the Court.

20        The Court will not accept a mere list of numbers associated with form instructions from the

21  Ninth Circuit Model Jury Instructions, CACI, BAJI or other source of jury instructions. The proposed

22  jury instructions must be in the form and sequence which the parties desire to be given to the jury. Any

23  blank fields in the form instructions must be filled-in before they are submitted to the Court. Irrelevant

24  or unnecessary portions of form instructions must be omitted.

25        Ninth Circuit Model Jury Instructions shall be used where the subject of the instruction is

26  covered by a model instruction. Otherwise CACI or BAJI instructions shall be used where the subject

27

28  [6] The deadline set for trial briefs set in this order shall supersede the deadline set in Local Rule 285(a).

of the instruction is covered by CACI or BAJI. All instructions shall be short, concise, understandable, and consist of neutral and accurate statements of the law. Argumentative or formula instructions will not be considered.

If any party proposes a jury instruction that departs from the language used in the Ninth Circuit Model Jury Instructions, CACI, BAJI or other source of jury instructions, that party shall, by italics or underlining, highlight the differences in language and must cite the legal authority supporting the modification.

No later than **October 6, 2016**, the parties shall file and serve written objections to any disputed jury instructions proposed by another party. All objections shall be in writing and (1) shall set forth the proposed instruction objected to in its entirety, (2) shall specifically set forth the objectionable matter in the proposed instruction, and (3) shall include a citation to legal authority to explain the grounds for the objection and why the instruction is improper. A concise argument concerning the instruction may be included. Where applicable, the objecting party shall submit an alternative proposed instruction covering the subject or issue of law.

**F.    Proposed Verdict Form**

The Court will prepare the verdict form, which the parties will have the opportunity to review on the morning of trial.  If the parties wish to submit a proposed verdict form, they must do so on or before **September 30, 2016**.  Defense counsel's proposed verdict form shall also be e-mailed as a Word® attachment to saborders@caed.uscourts.gov no later than **September 30, 2016.**

**G.    Proposed Jury Voir Dire**

Proposed voir dire questions, if any, shall be filed on or before **September 30, 2016**, pursuant to Local Rule 162.1(a).  The parties each are limited to fifteen (15) minutes of jury voir dire, unless this Court determines more time is warranted.

**H.    Statement of the Case**

The parties may serve and file a non-argumentative, brief statement of the case which is suitable for reading to the jury at the outset of jury selection on or before **September 30, 2016**.  The Court will consider the parties' statements but will draft its own statement. The parties will be provided with the opportunity to review the Court's prepared statement on the morning of trial.

21

## XIV.   ASSESSMENT OF JURY COSTS FOR FAILURE TO TIMELY NOTIFY COURT OF SETTLEMENT

The parties must immediately notify the Court of any agreement reached by the parties which resolves this litigation in whole or in part.  Local Rule 160(a).  The parties must advise the Court of settlement <u>immediately</u>, but must do so no later than 4:30 p.m. (Pacific Time) on **October 6, 2016.**  If, for any reason attributable to counsel or parties, including settlement, the Court is unable to commence a jury trial as scheduled when a panel of prospective jurors has reported for <u>voir dire</u>, the Court may assess against counsel or parties responsible all or part of the cost of the panel.  Local Rule 272(b). Jury costs will include attendance fees, per diem, mileage, and parking.  If the parties request a continuance after the jury has been called, the Court may assess jury costs as a condition for the continuance.

## XV.   COMPLIANCE WITH THIS ORDER

Strict compliance with this order and its requirements is mandatory.  This Court will strictly enforce the requirements of this pretrial order, especially those pertaining to jury instructions and verdict forms.  Failure to comply with all provisions of this order may be grounds for the imposition of sanctions, including possible dismissal of this action or entry of default, on any all counsel as well as on any party who causes non-compliance with this order.   This order shall be modified "only to prevent manifest injustice." Fed. R. Civ. P. 16(e).

Moreover, this order supersedes the parties' pretrial statement and controls the conduct of further proceedings irrespective of any purported rights the parties claim to reserve in their pretrial statement.

## XVI.   OBJECTIONS TO PRETRIAL ORDER

Any party may file and serve written objections to any of the provisions of this order on or before **September 5, 2016**. Such objections shall specify the requested modifications, corrections, additions or deletions.

**XVII.  USE OF ELECTRONIC EQUIPMENT IN COURTROOM**

Any party wishing to receive an overview or tutorial of the Court's electronic equipment must contact the Courtroom Deputy Clerk Mamie Hernandez at (559) 499-5672 or mhernandez@caed.uscourts.gov at least two (2) weeks before the start of trial in order to schedule a tutorial session at a time convenient to the Court's Information Technology staff.  The parties need to coordinate so everyone who is interested can attend the IT conference, the Court will hold only one conference per case.  The parties shall confer and advise the Courtroom Deputy Clerk Mamie Hernandez of the date and time that has been agreed upon.  The parties will not be provided any training on the day of or during the course of the trial.

The electronic equipment and resources available for this trial may differ from the equipment and resources available in other courtrooms and may even differ from the equipment and resources available in this courtroom at another time.  It is the responsibility of the parties to familiarize themselves with the equipment and resources available for use in this trial prior to the commencement of trial.  If any party is unfamiliar with the equipment and resources available for use in this trial, that party may be ordered to proceed without the aid of such equipment and resources and/or may be sanctioned for any fees, costs or expenses associated with any delay.

Depending upon Court available equipment at the time of trial, the Plaintiff may be provided with an electronic overheard projector at his trial table for purposes of showing exhibited and admitted exhibits at trial.  Accordingly, Plaintiff need not request that he allowed to use electronic equipment as Plaintiff may be provided with electronic equipment if available.

**XVIII. OTHER INFORMATION**

Additional information describing this Court's expectations regarding attorney conduct and decorum during all proceedings before United States Magistrate Judge Stanley A. Boone can be found at the United States District Court for the Eastern District of California's website (http://www.caed.uscourts.gov) under Judges; United States Magistrate Judge Stanley A. Boone (SAB).  In the area entitled "Case Management Procedures," there are links to "Standard Information" and "Trial Conduct and Decorum."  All parties and counsel shall comply with the guidelines set forth therein.  However, in the event that there is a conflict between this order and the information on the

1   Court's website, this order shall supersede the information on the Court's website.   Furthermore,

2   additional information can be found on the Court's link including the Court's "Jury Selection

3   Procedures" in civil juries.

4

5   IT IS SO ORDERED.

6   Dated:   **August 29, 2016**

7                                                                                     UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28